IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JUDITH SHERMAN,<br>  Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY, f/k/a<br>Burlington Northern and Santa Fe<br>Railway Company,<br>  Defendant. | Case No. 1:17-cv-01192-JEH |

**Order**

Now before the Court are Defendant BNSF Railway Company's Motion to Exclude Plaintiff's Expert Dr. Mark Levin (Doc. 100)[1], Defendant's Motion to Exclude Plaintiff's Expert Leonard Vance, Ph.D. (Doc. 101), and Defendant's Motion for Summary Judgment (Doc. 107). The Motions are fully briefed, and for the reasons set forth below, the Defendant's Motion to Exclude Plaintiff's Expert Dr. Mark Levin is GRANTED, the Defendant's Motion for Summary Judgment is GRANTED, and the Defendant's Motion to Exclude Plaintiff's Expert Leonard Vance, Ph.D. is MOOT.[2]

**I**

Plaintiff Judith Sherman filed the instant lawsuit on May 2, 2017 against Defendant BNSF Railway Company (BNSF) pursuant to the Federal Employers' Liability Act, 45 U.S.C. 51 *et seq.* (FELA). Compl. (Doc. 1). Specifically, the Plaintiff alleged that from 1957 to 2001, she was employed by the Defendant in its

---

[1] Citations to the Docket in this case are abbreviated as "(Doc. ___)."
[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Doc. 30).

Galesburg, Illinois railyard as a train order operator, crew caller, and in the clerk craft. 1st Am. Compl. (Doc. 22). She alleged that during the course and scope of her career with the Defendant and while working in its yards, building, and offices and near locomotives and other heavy machinery: she was exposed to various toxic substances and carcinogens including but not limited to asbestos, coal dust residue, solvent fumes, oil mist, diesel exhaust, benzene, and brake dust; she was routinely, on a daily basis, at various levels exposed to those toxic substances and known carcinogens, whether by touch, inhalation, and/or consumption; and the foregoing exposures caused or contributed to her development of colon cancer which was diagnosed on May 7, 2014. *Id.* The Plaintiff further alleged her exposure was cumulative and occurred daily or on a regular basis at different and variable exposure levels over the course of her career depending on her work location at a given moment throughout any given day. *Id.* Finally, the Plaintiff alleged her cancer and subsequent symptomatology are the result of the negligence of the Defendant in that it utilized the aforementioned known cancer causing materials in its operations. *Id.*

## II

On October 1, 2021, Defendant BNSF filed its Motion to Exclude Plaintiff's Expert Dr. Mark Levin seeking to bar Dr. Levin's opinions in this case pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Civil Procedure 702. The Plaintiff disclosed Dr. Levin as an expert witness on medical causation on February 1, 2021. Dr. Levin is a licensed and board-certified physician with specialties in internal medicine, oncology, and board-eligible in hematology. Though a "relaxed standard of causation applies under FELA," *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011), the standard for admissibility of expert testimony is not altered under FELA. *See Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771-72 (7th Cir. 2014) (considering whether plaintiff's expert

in FELA case presented reliable testimony under Rule 702, Rule 703, and *Daubert*). The parties frame their arguments in terms of Dr. Levin's general and specific causation opinions. *See Aurand v. Norfolk S. Ry. Co.*, 802 F. Supp. 2d 950, 953 (N.D. Ind. 2011) (stating a toxic tort plaintiff must adduce evidence of both general and specific causation). The Court proceeds in like manner and first considers Dr. Levin's general causation opinion.

**A**

In Dr. Levin's original report, dated August 31, 2020, he was asked to evaluate this case to determine whether the Plaintiff's exposure to carcinogens caused or contributed to her rectal cancer.[3] He stated the Plaintiff "was exposed to diesel exhaust, and asbestos at the BSNF [sic] Railroad [sic[ Company" and that she was exposed to "multiple carcinogens together repeatedly and over a prolonged time." Dr. Levin 8/31/20 Report pgs. 3, 4 (Doc. 100-1 at pgs. 3, 4). Dr. Levin cited two resources pertaining to diesel exhaust exposure and two resources pertaining to asbestos exposure in support of his opinion that "based on prolonged exposure to several carcinogens that cause rectal cancer, and the absence of other risk factors for this condition . . . Ms. Sherman's occupational exposures to diesel exhaust and asbestos were contributing factors in the development of her rectal cancer." (Doc. 100-1 at pg. 6). Dr. Levin authored two supplemental reports on January 31, 2021 and February 21, 2021 pertaining to the Plaintiff's declination of recommendations in 2007, 2009, 2010, and 2011 that she undergo a colonoscopy. (Docs. 100-2 and 100-3).

---

[3] The Plaintiff's treating oncologist, hematologist Dr. David Oubre confirmed at his deposition that the Plaintiff had a malignant neoplasm of the rectum, specifically adenocarcinoma. Dr. Oubre Dep. pg. 11 (Doc. 107-5 at pg. 4). He agreed that adenocarcinoma was the most common form of colorectal cancer. *Id.*

3

## B

### 1

Federal Rule of Evidence 702 and the principles outlined in *Daubert* govern the admissibility of expert testimony. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011). Federal Rule of Evidence 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Court is to act as a gatekeeper by "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. In performing its gatekeeper role, the district court must evaluate: 1) the proferred expert's qualifications; 2) the reliability of the expert's methodology; and 3) the relevance of the expert's testimony. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). Here, Defendant BNSF challenges only the reliability of Dr. Levin's testimony. To evaluate the reliability of the proffered expert's methodology, the Court should, in turn, consider among other factors: whether the theory can be and has been tested; whether the theory has been subjected to peer review and publication; the theory's known or potential rate of error; and the theory's level of acceptance within the relevant community. *Daubert*, 509 U.S. at 593-94. The reliability inquiry is a "flexible one," and, ultimately, the "focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594.

**2**

At his deposition, Dr. Levin testified that he "explored the literature," looked at industrial hygienist Dr. R. Leonard Vance's report (the Plaintiff's other retained expert), and relied upon his "understanding based on education, training and experience" to address whether or not asbestos causes rectal cancer. Dr. Levin Dep. pgs. 53-54, 57 (Doc. 100-4 at pgs. 14-15). As for his exploration of the literature, Dr. Levin explained that he "generally start[s] with a Google search looking at asbestos and whatever the condition may be, in this case, rectal, colorectal cancer, see what comes up and then pursue the thread." *Id.* at pg. 54. Dr. Levin testified that with regard to his opinions on diesel exhaust and rectal cancer, his "general approach is to do a Google search, and that's exactly what I did in this case as well." *Id.* at pg. 101 (Doc. 100-4 at pg. 26).

Defendant BNSF argues Dr. Levin's methodology is unreliable as he did not retain a list of what he viewed and what information he considered, he has no record of when the Google search was performed, what search terms he used, which sites he looked at, which articles he looked at, and what information he considered and discarded or why. The Plaintiff counters Dr. Levin's causation opinions were reliable because he drew from his extensive knowledge, training, and experience as a medical oncologist in this case, he undertook a review of the available literature, considering both positive and negative evidence, and he reviewed publications of authoritative bodies.

Dr. Levin's methodology – his Google search – seriously lacks indicia of reliability. For instance, when asked at his deposition, Dr. Levin explained that he did not have a list of all the studies he considered when he conducted his Google searches, and he did not "have a record of every step along the search." Dr. Levin Dep. pg. 54 (Doc. 100-4 at pg. 15). He emphasized "it's a process, it's a search." *Id.* Assuming such studies existed, Dr. Levin could not recall any studies that resulted

from his search that would have been negative or not supported a connection between rectal cancer and asbestos, and he "had not retained a list of such studies." *Id*. at pg. 55. He stated again that he "did not prepare a list of every paper I've looked at or a list that was specifically negative, I did not prepare or retain such a list." *Id*. at pg. 56. Instead, Dr. Levin insisted, "Well, you may not know it and I may not remember it [studies located when he conducted his Google search] at this time, but I'm quite confident that that search was methodologically correct and scientifically accurate." *Id*. at pg. 57. He insisted further that to the extent he saw negative studies, "I evaluated them, if I rejected them on such basis, that is an expert's opinion and expert's prerogative." *Id*. at pg. 58 (Doc. 100-4 at pg. 16). He answered, with respect to his general causation opinions in this case, that he "did not review every paper that may have addressed [scientific studies that have addressed specifically asbestos and either rectal or colorectal cancer], [he] had not tabulated, counted, recorded and therefore [he could not] produce such a list." *Id*. at pg. 61. Dr. Levin similarly testified with regard to his opinions on diesel exhaust and rectal cancer, he conducted a Google search but did not retain a list of studies which related to that search. *Id*. at pg. 101 (Doc. 100-4 at pg. 26). He stated further, "To the extent there are such papers [of studies which may not support a connection between diesel exhaust exposure and rectal cancer], we do not know that." *Id*.

  The Court is entirely precluded from finding Dr. Levin's methodology was reliable where he did not keep any record whatsoever of the particulars of his Google search, including the simple fact of the date(s) on which he performed his Google searches. Significantly, it would be essentially impossible for defense counsel to effectively cross-examine Dr. Levin at trial without knowing the particulars of Dr. Levin's Google searches, specifically any information he reviewed and rejected and the reasons for doing so. Dr. Levin's methodology is

6

so lacking that it would be nearly useless to apply the non-exhaustive *Daubert* factors to it in order to determine its reliability. Dr. Levin's deposition testimony about the methodology he employed made abundantly clear that he expects the parties to accept the Plaintiff's work exposure to asbestos and diesel exhaust caused her rectal cancer because he says it did. But, of course, his say so is not enough nor, given the particular facts here, are his knowledge, training, and experience. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). The fact that Dr. Levin purportedly applied his knowledge, training, and experience to the existing data he reviewed does not eliminate the shortcoming that the full extent of that data is not known.

As for the underlying data and literature Dr. Levin did cite in support of his opinions, those sources did not speak in definite terms. Instead, the American Cancer Society website stated: "Some studies have also *suggested* that workplace asbestos exposure *may* be linked to other cancers, including cancers of the . . . colon, and rectum. *However*, the link between these cancers and asbestos *is not as clear* as it is for the other cancers discussed here." American Cancer Society, https://www.cancer.org/cancer/cancer-causes/asbestos.html (last visited Jan. 14, 2022) (emphasis added); Dr. Levin 8/31/20 Report pg. 5 (Doc. 100-1 at pg. 5). The cited "Paris study"[4] stated with regard to asbestos exposure: "Our study *did not provide any clear evidence of an association with rectal cancer*, but these findings should be interpreted cautiously in view of the insufficient number of cases." https://ehp.niehs.nih.gov/doi/10.1289/ehp153 (last visited Jan. 14, 2022)

---

[4] The Court refers to Dr. Levin's cited resources using the titles given them by Defendant BNSF in its Motion to Exclude Plaintiff's Expert Dr. Mark Levin.

7

(emphasis added); Dr. Levin Dep. pg. 95 (Doc. 100-4 at pg. 25) (emphasis added). The cited "Talibov study" stated: "This study showed a small risk increase for rectal cancer after workplace diesel exhaust exposure. However, *this finding could be due to chance*, given the limitations of the study." https://www.sciencedirect.com/science/article/pii/S2093791118302348 (last visited Jan. 14, 2022) (emphasis added). The cited "Kachuri study" stated: "Our findings *suggest* that sustained high-level exposure diesel emissions *may* increase the risk of rectal cancer," and "the observed increases in rectal cancer risk *should be viewed with caution*, and it is possible that *some of these associations may be due to chance*." https://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0088-1 (last visited Jan. 14, 2022) (emphasis added). The reservations stated in each of Dr. Levin's cited sources underscores the need for a more robust articulation from Dr. Levin as to the information he considered and accepted or rejected; only then could the Court determine whether Dr. Levin's opinions were based upon more than his mere say so.

The Plaintiff unconvincingly highlights Dr. Levin's testimony that "associated with" and "caused" are basically equivalent and that medical literature typically speaks in terms of association as opposed to causation due to the high level of proof and certainty required to use the term "caused." Such testimony magnifies the shortcomings in Dr. Levin's report. Since he *definitively* opined that the Plaintiff's occupational exposures to diesel exhaust and asbestos were contributing factors in the development of her rectal cancer, it was incumbent upon Dr. Levin to present a methodology showing a high level of proof was considered. Dr. Levin himself agreed "there's a difference between the word association and causation" and that the "Paris study" "set out to look at the association and it found that there was an association . . . It would not be expected

8

that the word causation should appear when the clearly stated goal is to look at the association . . . ." Dr. Levin Dep. at pgs. 90-91 (Doc. 100-4 at pg. 24).

As for the Defendant's recitation of its own expert's (Dr. Douglas L. Weed) comment that Dr. Levin's report "would be immediately rejected without peer review because it is so far from an adequate review of the evidence on [the proposed relationships between asbestos and rectal cancer and diesel exhaust and rectal cancer]," the Court may consider such evidence without delving into the jury's province of deciding among the conflicting views of different experts. Dr. Weed 6/30/21 Report pg. 71 (Doc. 100-6 at pg. 71). After all, *Daubert* instructs a court to consider whether a proffered expert's theory has been subjected to peer review and publication. Dr. Weed's comments are further proof that Dr. Levin's methodology is unreliable.

Because Dr. Levin's general causation opinion is not reliable, it is unnecessary for the Court to address his specific causation opinion; obviously, Dr. Levin's specific causation opinion cannot be reliable if his general causation opinion is not. *See Aurand*, 802 F. Supp. 2d at 953 (explaining that general causation addresses "whether a particular agent *can cause* a particular illness" and specific causation addresses "whether that agent *in fact* caused the particular plaintiff's illness") (emphasis in original).

### 3

While Dr. Levin's flawed methodology is enough to exclude his opinions in this case, he also failed to grasp the basic facts to which he applied that flawed methodology. In his August 31, 2020 report, Dr. Levin incorrectly indicated the Plaintiff worked in the Defendant's Galesburg, Illinois railyard from 1957 to 1992 (she actually worked there until 2001) and that her husband had Hodgkin's Disease (she was actually never married). At his deposition, Dr. Levin testified that passing out train orders outside "was a part of [Sherman's] job for decades,

maybe 35 years or something like that." Dr. Levin Dep. pg. 146 (Doc. 100-4 at pg. 38). The Plaintiff testified, however, that she did not remember how many years she worked at the depot in downtown Galesburg handing up order to passenger train crews, but stated, "I was there until they moved us to the yard office . . . The train crews would come up to the office and get their orders. I didn't have to go outside[.]" Plf's Dep. pgs. 100-01 (Doc. 100-5 at pg. 26). In other words, she did not testify to handing up train orders for decades. Dr. Levin also stated, "I don't know anything about [railroad] clerks in general," when asked if he thought during the Plaintiff's full employment period with BNSF, clerks would go out into the yard and pass train orders.[5] Dr. Levin Dep. pg. 147 (Doc. 100-4 at pg. 38). Dr. Levin also twice incorrectly referred to the Defendant as "BSNF Railroad" in his original report. The foregoing testimony and misstatements only further detract from the representation that Dr. Levin is a qualified expert witness.

Accordingly, the Court finds that the Plaintiff's expert Dr. Levin's opinions must be excluded in this case as they fall short under Rule 702 and *Daubert*.

### III

On November 5, 2012, Defendant BNSF filed its Motion for Summary Judgment arguing that the Plaintiff cannot prove the causation prong of her negligence claim, and her FELA claim is barred by the statute of limitations. In the introduction to its Motion for Summary Judgment, the Defendant explained that its summary judgment motion presumed its Motions to Exclude Drs. Levin and Vance would be granted and thus did not address those two experts. The Plaintiff stated in both of her Reponses to the Motions to Exclude that while she conceded that the granting of either Motion to Exclude would constitute a basis for summary judgment, they were not independently dispositive. The Plaintiff

---

[5] As provided in Section I, the Plaintiff alleged she was employed by the Defendant in its Galesburg, Illinois railyard, among other roles, in the clerk craft.

10

did not address the Defendant's causation argument at all in her Response to the Motion for Summary Judgment; instead, she presented arguments and evidence that her Complaint was timely filed.

The Plaintiff is wrong that the Court's exclusion of Dr. Levin is not independently dispositive. A plaintiff "must prove the common law elements of negligence to prevail in a FELA case, including foreseeability, duty, breach, and causation," though, as noted *supra*, a "relaxed standard of causation applies under FELA." *Crompton v. BNSF Ry. Co.*, 745 F.3d 292, 296 (7th Cir. 2014) (quoting *CSX Transp., Inc.*, 564 U.S. at 690). Here, the Plaintiff claims that during the course and scope of her career with the Defendant, she was exposed to various toxic substances and carcinogens and said exposure caused or contributed to her development of colon cancer. The only evidence of said causation the Plaintiff has presented to the Court is Dr. Levin's opinions. Now that the Plaintiff cannot avail herself of such evidence, she cannot prove the necessary element of causation (relaxed or not). *See Coffey v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 479 F.3d 472, 476 (7th Cir. 2007) ("The fact that there may have been a number of causes of the injury is irrelevant as long as one cause may be attributable to the railroad's negligence") (quoting *Heater v. Chesapeake & Ohio Ry. Co.*, 497 F.2d 1243 (7th Cir. 1974)). Thus, the Defendant is entitled to summary judgment.

IV

On October 1, 2021, Defendant BNSF filed its Motion to Exclude Plaintiff's Expert Leonard Vance, Ph.D. Dr. Vance was "asked to offer opinions relating to industrial hygiene issues in connection with toxic substance exposures suffered by [the Plaintiff] while working with the BNSF Railroad and it predecessors[.]" Dr. Vance 2/1/21 Report pg. 1 (Doc. 101-1 at pg. 1). He offered opinions on what BNSF and it's predecessors failed to do (namely, to provide the Plaintiff with a reasonably safe place to work). He did not provide any opinions as to what caused

the Plaintiff's cancer.  The Motion to Exclude Dr. Vance is therefore moot as ruling on it in the Plaintiff's favor would not salvage the Plaintiff's claim.

## V

For the foregoing reasons, Defendant BNSF Railway Company's Motion to Exclude Plaintiff's Expert Dr. Mark Levin (Doc. 100) is GRANTED, Defendant's Motion to Exclude Plaintiff's Expert Leonard Vance, Ph.D. (Doc. 101) is MOOT, and Defendant's Motion for Summary Judgment (Doc. 107) is GRANTED.  The Clerk is directed to terminate this case.

*It is so ordered.*

Entered on January 14, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE